IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHERIL ANN CARR, <br> Plaintiff, | Civil Action No. 7:07cv00001 |
| v. | **MEMORANDUM OPINION** |
| HANK HAZELWOOD, et al., <br> Defendants. | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Proceeding pro se, plaintiff Sheril Ann Carr brings this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Carr alleges that, subsequent to her re-placement at Pittsylvania County Jail in April of 2006, Sergeant Hank Hazelwood molested her and sexually harassed her.[1,2] The case is currently before the court on defendant Hazelwood's motion for summary judgment, which is ripe for disposition. For the reasons that follow, I will deny Hazelwood's motion and set this matter for a jury trial on Carr's 2006 sexual harassment and molestation claims.[3]

## I. Factual Background

Carr's complaint, filed on January 3, 2007, alleges a claim of molestation, in violation of the Eighth Amendment, against former Pittsylvania County Jail Sergeant, Hank Hazelwood, arising out

---

[1] By Order entered April 24, 2007, I dismissed plaintiff's 2004 molestation claims against Hazelwood and her 2004 excessive force claim against Deputy Corporal Pickeral as untimely. A separate Order entered on that same date dismissed plaintiff's claims against the Pittsylvania County Sheriff's Department and Jail and the County of Pittsylvania. Accordingly, the only remaining defendant is Hank Hazelwood and the only remaining claims concern allegations of molestation and sexual harassment in 2006.

[2] Plaintiff is currently incarcerated at Virginia Correctional Center for Women located in Goochland, Virginia.

[3] In plaintiff's response to the motion for summary judgment she "moves the court for trial," (Pl. Resp. Mot. Summ. J. at 11); furthermore, in plaintiff's motion to appoint counsel, she specifically notes that she requests an attorney, in part, to draft jury instructions. Accordingly, I will construe these filings as a demand for a trial by jury pursuant to Federal Rule of Civil Procedure 38.

of an incident on some unspecified date in April of 2006.[4] Carr alleges that on that date she requested the use of a telephone to call her friend Richard Calhoun to inform him about her transfer from Guilford County Jail to Pittsylvania County Jail. She claims that Hazelwood subsequently retrieved her from her cell and brought her into his office. Hazelwood sat behind his desk and then dialed the phone number that Carr requested and handed her the phone. Carr alleges that she was "frightened to be alone in Hazelwood's office." (Pl. Resp. Mot. Summ. J. at 3.) Carr alleges that Hazelwood closed the door almost completely and positioned himself "where anyone in the control room would not be able to see." (Pl. Resp. Mot. Summ. J. at 3.) Hazelwood then grabbed Carr's breast and "pushed [her] chair back" and required her to "stand by the chair." (Compl., Ex. C at 8.) Carr alleges that Hazelwood then "inserted his fingers into [her] vagina" and that she "was in that position for an hour or longer." (Compl., Ex. A at 4.) She contends that she stayed on the phone with Calhoun for an unspecified period of time and that he "asked a few times if [she] was ok" but it "was difficult to talk to him on the phone and be molested at the same time." (Compl., Ex. A at 4.) She alleges that she was "in shock" and was "trying to focus on a picture on the wall of a police dog." (Pl. Resp. Mot. Summ. J. at 4.) She alleges that when Hazelwood was "finish[ed]" he "washed his hands in the sink and asked [her] if [she] got off." (Pl. Resp. Mot. Summ. J. at 4.) Hazelwood then questioned Carr as to why she was "back in jail" and stated that he had attempted to locate Carr subsequent to her prior release from incarceration. (Pl. Resp. Mot. Summ. J. at 3.) Carr further alleges that she requested a DNA test immediately subsequent to the incident, but that this request was denied. She also claims that Hazelwood "repeatedly" requested that Carr reveal her

---

[4] Carr also appears to be alleging a claim for assault and battery pursuant to Virginia law. (Pl. Resp. Answer at 7.) Accordingly, I will exercise supplemental jurisdiction over these state law claims, pursuant to 28 U.S.C. § 1367.

breasts and vagina on other unspecified occasions.

Carr alleges that she urinated blood due to the incident in Hazelwood's office and complains that she suffers from "severe emotional . . . physical . . . and mental trauma" due to [Hazelwood's] sexual assault." (Pl. Resp. Answer at 6.; Compl., Ex. C at 6.). She alleges that she experienced "fright, shock, embarrassment, humiliation, mortification, emotional anguish and trauma" during the incident and claims that she has since suffered from vomiting, "severe nightmares," "pain," "fear," and incontinence. (Pl. Resp. Mot. Summ. J. at 6.; Pl. Mot. Am. at 2.) She further alleges that she suffers from "post[-]traumatic stress disorder," "shame," and "guilt" which require medication and counseling. (Pl. Mot. Am. at 3; Pl. Resp. Mot. Summ. J. at 7.)

Carr provides the names of several other women who were incarcerated at Pittsylvania County Jail during the time in question as possible witnesses to the alleged sexual harassment and assault.[5] Carr also alleges that, pursuant to an internal investigation of the April 2006 claim, she was given a polygraph test on July 13, 2006, and that the test administrator informed Carr that he believed her story but that the tests were inconclusive. Finally, Carr alleges that she has a sexually explicit letter written to her by Hazelwood, but that she placed the letter in a black backpack and she can no longer locate the bag. She believes that it was stolen.

Hazelwood denies that he touched Carr in an improper way and specifically denies that he attempted to fondle or touch her breasts or other private parts. Hazelwood informs the court that, subsequent to Carr's complaint concerning the alleged April 2006 incident, the Sheriff's Office conducted an internal affairs investigation. The report concluded that there was no reliable, credible or substantiating evidence to support the allegations that Hazelwood sexually assaulted Carr.

---

[5] I note that most of these witnesses allegedly witnessed the sexual harassment and assaults in 2004, which are not at issue in this case.

## II. Standard of Review

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Fed. R. Civ. P. 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at 256-57.

## III. Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

A prison guard may violate the Eighth Amendment by sexually harassing or sexual assaulting

an inmate. Sexual assault is "not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries" under § 1983. Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998); see also Wright v. O'Hara, No. Civ. A. 00-1557, 2004 WL 1793018 at *7 (E.D. Pa. Aug. 11, 2004) (agreeing that sexual assault, coercion and harassment are "simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994))). An inmate has a "constitutional right to be secure in her bodily integrity and free from attack by prison guards." Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993) (citing Alberti v. Klevenhagen, 790 F.2d 1220, 1224 (5th Cir. 1986)). The right to be secure in one's bodily integrity includes the right to be free from sexual abuse. Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003).

To be actionable under the Eighth Amendment, the alleged sexual contact must be incompatible with "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (citing Estelle v. Gamble, 429 U.S. 97, 103-04 (1976)). Sexual assaults against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment as acts which are "offensive to human dignity." Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (9th Cir. 2000); see also Copeland v. Nunan, No. 00-20063, 2001 WL 274738 at *2 (5th Cir. Feb. 21, 2001); Whitley v. Albers, 475 U.S. 312 (1986) (finding that the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind). However, not every malevolent touching gives rise to a federal cause of action. See Hudson v. McMillian, 503 U.S. 1 (1992).

A two-part test governs whether a prisoner has established a constitutional violation under

the Eighth Amendment. First, the prisoner must demonstrate, objectively, that the alleged deprivation of her constitutional rights was sufficiently serious. See Copeland, 2001 WL 274738 at *2; Harper v. Showers, 174 F.3d 716, 719-720 (5th Cir. 1999); Washington v. City of Shreveport, No. 03-2057, 2006 WL 1778756 at *5 (W.D. La. June 26, 2006). Sexual abuse is repugnant to contemporary standards of decency and allegations of sexual abuse can satisfy the objective component of an Eighth Amendment excessive force claim. Smith, 339 F.3d at 1212; see also Boddie v. Schnieder, 105 F.3d 857, 861 (2nd Cir. 1997) (finding that the jurisprudence is clear that "severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation").

The second element is subjective; whether the official had a "sufficiently culpable state of mind." Boddie, 105 F.3d at 861; see also Harper, 174 F.3d at 719-720; Copeland, 2001 WL 274738 at *2. "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the [sexual harassment and] abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." Id. In cases of sexual abuse or rape, "the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" Giron v. Corrections Corp. of America, 191 F.3d 1281, 1290 (10th Cir. 1999) (quoting Whitley, 475 U.S. at 320-21)).

Taking the facts in the light most favorable to plaintiff, I find that plaintiff's allegations are "'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." Boddie, 105 F.3d at 861; compare Hammond v. Gordon County, 316 F. Supp. 2d 1262, 1287 (N.D. Ga. 2002) (allegations that a male jail guard required female inmate to strip in order to receive toiletries, and inserted his finger in inmate's vagina, stated claim that guard violated inmate's Eighth

Amendment rights) with Jackson v. Madery, 158 F. App'x 656, 661-62 (6th Cir. 2005) (allegation of rubbing and grabbing of prisoner's buttocks in a degrading manner did not amount to an Eighth Amendment violation) and Williams v. Anderson, No. 03-3254, 2004 WL 2282927, at *1, *4 (D. Kans. Sept. 7, 2004) (no Eighth Amendment violation where prison guard grabbed plaintiff's buttocks, exposed his penis to plaintiff, and made crude sexual remarks). Further, because there can be no legitimate purpose for the molestation alleged by plaintiff, her allegations satisfy the requirement that she show Hazelwood acted with a sufficiently culpable state of mind.[6] Plaintiff's allegations articulate a scenario that a reasonable fact-finder could find violates the Eighth Amendment's ban on cruel and unusual punishment. Consequently, a genuine issue for trial exists making summary judgment inappropriate at this time.

## IV. Conclusion

Based on the foregoing, the court will deny defendants' motion for summary judgment and set this matter for trial.

ENTER: This ____ day of December, 2007.

Senior United States District Judge

---

[6] Additionally, given that plaintiff alleges that she urinated blood and suffered from incontinence as a result of the alleged incident, the court cannot at this stage grant summary judgment on a finding that plaintiff suffered de minimis injuries, as defendant summarily argues in his motion for summary judgment.

-7-