CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
OCT 08 2008
JOHN F. CORCORAN, CLERK
BY: K Bauserman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHERIL A. CARR, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 7:07cv00001 |
| v. | ) ) | |
| HANK HAZELWOOD, | ) ) | By: Michael F. Urbanski<br>United States Magistrate Judge |
| Defendant. | ) ) | |

### REPORT AND RECOMMENDATION

Plaintiff Sheril A. Carr ("Carr"), a former inmate at Pittsylvania County Jail, filed this action under 42 U.S.C. § 1983, alleging that Defendant Hank Hazelwood ("Hazelwood") sexually assaulted her while she was housed at the Pittsylvania County Jail on April 16, 2006. This matter is before the undersigned for report and recommendation on Hazelwood's motion for summary judgment. The specific issue before the court is whether plaintiff has fully exhausted her administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). This issue was briefed and orally argued on September 19, 2008. For the reasons set forth below, the undersigned finds that Hazelwood has waived the affirmative defense of failure to exhaust and that Carr did, in fact, exhaust her available remedies; thus it is recommended that the motion for summary judgment be denied.

### I

Carr alleges that Hazelwood sexually assaulted her while she was incarcerated at the Pittsylvania County Jail on April 16, 2006. Three days later, Carr was transferred from the Pittsylvania County Jail to the Danville City Jail. Carr was never housed in the

Pittsylvania County Jail again following her transfer on April 19, 2006. (See Def.'s Br. Ex. 1.)

During the three days immediately following the alleged sexual assault, while Carr was still housed in the Pittsylvania County Jail, Carr did not complain to authorities or file a written grievance. The Pittsylvania County Jail has a written Grievance Procedure, the stated purpose of which is:

> (1) to assure that inmate complaints are given full opportunity for a fair hearing, consideration and resolution. This formal procedure is intended to supplement, not replace, informal methods of complaint resolution at all levels;
>
> (2) to assist the jail administration in identifying facility problems.

(Pl.'s Br. Ex. 1.) The policy contains no time limits for filing written grievances. Moreover, the grievance procedure specifically provides that "[g]rievances filed by inmates of Pittsylvania County Jail shall not be forwarded to any location to which the inmate may be transferred." (Pl.'s Br. Ex. 1.)

Three months after the alleged assault, while being transported between the Danville City Jail and the Pittsylvania County Jail for a hearing in the Pittsylvania County Circuit Court on June 13, 2006, Carr verbally complained of the alleged assault to Deputy Sheriff Linda Eaton. Deputy Eaton then met with Sheriff's Office Investigator Veronica Beauvais and explained the allegations that had been reported to her. A four month internal investigation ensued and a number of witnesses were interviewed concerning the allegations made by Carr. As a result of this investigation, the Sheriff's office issued a report on October 26, 2006 adjudicating Carr's complaint as "not sustained." (Pl.'s Br. Ex. 2.)

2

Carr, initially proceeding pro se, filed a complaint against Hazelwood on January 3, 2007, while she was housed at the Middle River Regional Jail. Hazelwood filed an answer on September 11, 2007. On October 1, 2007, the undersigned directed Hazelwood to file a motion for summary judgment pursuant to the court's standing order entered May 3, 1996. Hazelwood filed an initial motion for summary judgment on November 13, 2007, claiming no sexual contact occurred and any resulting harm was de minimis. Hazelwood's motion for summary judgment was denied by order dated December 14, 2007.

Subsequently, Carr obtained counsel, who entered a notice of appearance on March 18, 2008. Carr filed an amended complaint on May 14, 2008. In response to this amended complaint, Hazelwood, for the first time, asserted as an affirmative defense that Carr failed to exhaust her administrative remedies. On August 20, 2008, Hazelwood filed a second motion for summary judgment, contending that Carr has not filed a written grievance with the Pittsylvania County Sheriff's Office Corrections Division for any alleged incident involving Hazelwood, (Crews' Aff. ¶ 4), and thus has not exhausted her administrative remedies.

## II

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), overruled on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). However, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (court need not accept plaintiff's

3

Case 7:07-cv-00001-JLK-mfu    Document 67-1    Filed 10/08/08    Page 3 of 13    Pageid#: 272

"unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994) ("This court will construe factual allegations in the nonmoving party's favor and will treat them as true, but is not so bound with respect to the complaint's legal conclusions."). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

### III

The issue before the court on summary judgment is whether Carr exhausted her available administrative remedies. The PLRA requires a prisoner to exhaust all available administrative remedies before bringing a claim under 42 U.S.C. § 1983, even where the relief sought cannot be granted by the administrative process. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Porter v. Nussle, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 532 U.S. 731, 739 (2001) (finding that the PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative

4

remedies). Pursuant to the PLRA, prisoners must not just initiate timely grievances, but must also make a timely appeal of any denial of relief through all levels of available administrative review. Woodford, 548 U.S. at 93 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions). Finally, in order to properly exhaust a claim, an inmate must file grievances with sufficient detail to alert prison officials of the possible constitutional claims which are now alleged as a basis for relief. See Smith v. Rodriguez, No. 7:06-cv-00521, 2007 WL 1768705 (W.D. Va. June 15, 2007) (citing McGee v. Fed. Bureau of Prisons, 118 Fed. Appx. 471, 476 (10th Cir. 2004)).

The PLRA applies to this case despite the fact that Carr was released from prison during the pendency of this suit. "Although the Fourth Circuit has not yet considered this question, other circuits of the Court of Appeals have held that the administrative exhaustion requirement under the PLRA continues to apply when a prisoner is released while his lawsuit still is pending in federal court." Chase v. Peay, 286 F. Supp. 2d 523, 527 (D. Md. 2003), aff'd 98 Fed. Appx. 253 (4th Cir. 2004). This is consistent with the plain language of the PLRA, which focuses on the time that a lawsuit is "brought" in federal court. Id. at 528; see 42 U.S.C. § 1997e(a). The applicability of the exhaustion requirement is determined at the time of filing. Id. at 528. Carr filed this suit on January 3, 2007, while she was still incarcerated.

### IV

Failure to exhaust is an affirmative defense that defendant has the burden of pleading and proving. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005). Federal Rule of Civil Procedure 8(c) provides that a party must

5
Case 7:07-cv-00001-JLK-mfu Document 67-1 Filed 10/08/08 Page 5 of 13 Pageid#: 274

affirmatively state any avoidance or affirmative defense in response to a pleading. "It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1278 (3d ed. 2004); see Brinkley v. Harbour Recreation Club, 180 F.3d 598, 612 (4th Cir. 1999), abrogation on other grounds recognized by Hill v. Lockheed Martin Logistics Management, Inc., 345 F.3d 277 (4th Cir. 2004); see also Johnson v. Testman, 380 F.3d 691, 696 (2d Cir. 2004) (holding that the defense of failure to exhaust under the PLRA may be waived). Waiver, however, is not automatic; it requires a showing of prejudice or unfair surprise. Peterson v. Air Line Pilots Ass'n, Int'l, 759 F.2d 1161, 1164 (4th Cir. 1985).

In this case, Hazelwood did not raise the affirmative defense of failure to exhaust in his answer to Carr's complaint, which was filed on September 11, 2007. Nor did he raise the exhaustion defense in his initial motion for summary judgment filed on November 13, 2007. Rather, Hazelwood first raised this defense in response to Carr's amended complaint in May, 2008. He then waited an additional three months before moving for summary judgment on the issue of exhaustion on August 20, 2008.

On October 1, 2007, the undersigned directed Hazelwood to file a motion for summary judgment within twenty days, pursuant to the court's standing order entered May 3, 1996. The purpose of this standing order[1] is to reduce the cost and expense borne by the United States and the parties to pro se prisoner civil rights litigation by directing

---

[1] See http://www.vawd.uscourts.gov/storders/prosecivilrights.htm.

that motions for summary judgment be filed expeditiously and dispositive issues, such as failure to exhaust under the PLRA, be raised and dealt with promptly.

Hazelwood did not raise the issue of exhaustion promptly and makes no excuse for his failure to include the exhaustion defense in his original answer or in his initial motion for summary judgment. Likewise, there is no indication that Hazelwood discovered facts supporting the failure to exhaust defense after his original answer was filed. Indeed, relevant Pittsylvania County Jail and Sheriff's Office records were just as available to Hazelwood in September and November, 2007, as they were in May, 2008. This type of delay is precisely what the court's May 3, 1996 standing order seeks to avoid.

Hazelwood cannot now, as a matter of right, add a previously unmentioned affirmative defense in response to an amended complaint that in no way changes Carr's theory of the case. In E.E.O.C. v. Morgan Stanley & Co., Inc., 211 F.R.D. 225, 227 (S.D.N.Y. 2002), the court held defendant was not entitled to add defenses as of right where plaintiff's amended complaint merely reflected a change in terminology. The court found that since plaintiff's amended complaint did not change the theory of the case or expand the scope, defendant should have sought leave to amend its original answer in order to assert defenses unrelated to plaintiff's amended complaint. Id. at 227; accord Elite Entertainment, Inc. v. Khela Bros. Entertainment, 227 F.R.D. 444, 446 (E.D. Va. 2005) ("[A]n amended response may be filed without leave only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of changes in the amended complaint."); cf. Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000) (holding plaintiff's new

7

complaint did open the door for defendants to raise new and previously unmentioned affirmative defenses, and stating "[t]o hold to the contrary would, in essence, enable plaintiffs to change their theory of the case while simultaneously locking defendants into their original pleading."). This is consistent with the requirement in Federal Rule of Civil Procedure 15 that an amended pleading must "plead in response" to the amended pleading. Elite, 227 F.R.D. at 446-47. "If every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause." Morgan Stanley, 211 F.R.D. at 227.

In this case, Hazelwood seeks to revive an affirmative defense that would likely have been precluded, by raising the defense in response to Carr's amended complaint. However, this amended complaint does not change Carr's theory of the case or expand the scope of her allegations. Rather, the amended complaint was filed after Carr obtained counsel and merely takes Carr's pro se allegations and places them in proper pleading format. The amended complaint makes no substantive changes to Carr's original allegations.

Given the circumstances in this case, the undersigned finds that Hazelwood has waived the affirmative defense of failure to exhaust. Hazelwood inexplicably failed to raise the defense in his answer to Carr's original complaint and in his initial motion for summary judgment, which the court directed him to file in the interest of saving time and costs. Instead, he waited until May, five months prior to trial, to first raise the issue of failure to exhaust. Hazelwood then waited until August, two months prior to trial, to bring the issue before the court in a motion for summary judgment. At this late stage of

8

the game, allowing Hazelwood to raise this affirmative defense would be unfair and prejudicial to Carr,[2] who has expended a great deal of time and cost preparing for trial on the merits. Hazelwood's exhaustion defense simply comes too late and the undersigned recommends that his motion for summary judgment be denied.

V

Even if Hazelwood's exhaustion defense was timely filed, his motion for summary judgment falls short on the merits. Defendant argues that Carr failed to file a written grievance form at Pittsylvania County Jail, thus she failed to exhaust her administrative remedies under the PLRA. The undersigned disagrees.

The PLRA requires prisoners to exhaust available administrative remedies prior to filing suit in federal court. 42 U.S.C. § 1997e(a). The administrative remedies available to inmates housed at the Pittsylvania County Jail are set forth in the Pittsylvania County Jail Written Grievance Procedure ("Grievance Procedure"). This Grievance Procedure expressly notes that its purpose is "to supplement, not replace, informal methods of complaint resolution at all levels." (Pl.'s Br. Ex. 1.) The Grievance Procedure does not define "informal methods of complaint resolution." However, it indicates that informal complaints are satisfactory methods of grieving under the Pittsylvania County Jail policy.

Carr verbally complained of the alleged assault to Pittsylvania County Deputy Sheriff Linda Eaton on June 13, 2006. She also provided a six page written account of her allegations. (Pl.'s Br. Ex. 3.) A four month investigation followed. This is a

---

[2] Additionally, Carr argues if this case were dismissed without prejudice to allow Carr to exhaust her administrative remedies at this point, she may be prevented from re-filing the action by the statute of limitations. (See Pl.'s Br. 16.)

9

permissible method of "informal complaint resolution" under the Pittsylvania County Jail Grievance Procedure. Thus, Carr exhausted her available administrative remedies.

The United States Supreme Court held in Porter v. Nussle, 534 U.S. 516, 524 (2002):

> Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims."

Id. (internal citations omitted). Carr clearly put the Pittsylvania County Jail on notice of her complaint and gave corrections officials plenty of time and opportunity to address her complaint internally. Indeed, the complaint was addressed through a four month internal investigation. The next step for Carr in terms of pursuing her claim was to file the instant federal action.

A relevant question in an exhaustion analysis is what administrative remedies were "available" to plaintiff. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions ... until such administrative remedies as are available are exhausted."). In the instant case, an informal complaint was the only remedy available to Carr. Carr was transferred to another facility three days after Hazelwood allegedly assaulted her.[3] Hazelwood has failed to show that Carr could have completed the formal,

---

[3] Hazelwood argued at the summary judgment hearing that Carr knew at the moment she was allegedly assaulted that an assault had occurred, thus there is no reason for her not to have filed a grievance over the following three days. However, the assault at issue is a sexual assault, which, if true, carries with it significant emotional stress. The

10

written grievance process within those three days. The Grievance Procedure makes clear that grievances filed by inmates of Pittsylvania County Jail shall not be forwarded to any location to which the inmate may be transferred. Hazelwood offers no evidence to show the written Grievance Procedure was available to Carr after she was transferred.[4] The Grievance Procedure itself suggests it applies only to Pittsylvania Jail inmates, and it makes no allowance for inmates housed at another facility in a different jurisdiction to file written grievances about conditions at the Pittsylvania County Jail. Carr's transfer to Danville City Jail three days following the alleged assault effectively deprived her of her ability to file a written, formal grievance under the Grievance Procedure. Thus, she grieved through the only method available to her, informally complaining to Deputy Sheriff Eaton.

Hazelwood argues that if Carr had exhausted her administrative remedies by filing a formal, written grievance pursuant to the Grievance Procedure, Hazelwood would have had an opportunity to gather evidence of vaginal trauma at the time of the alleged assault. Hazelwood's argument is unconvincing. The Pittsylvania County Jail Grievance Procedure sets no time limit within which formal grievances must be filed. Thus, even if Carr had been housed at Pittsylvania County Jail for a substantial period of time following the alleged assault, there is no guarantee that she would have filed a written grievance within a time when evidence of vaginal trauma was available. Moreover, the

---

fact that Carr did not file a grievance three days after this alleged sexual assault is understandable under the circumstances. Furthermore, Hazelwood has provided no evidence to show that Carr knew of her impending transfer and purposefully waited to file a written grievance to game the system.

[4] Likewise, Hazelwood has failed to show that the Pittsylvania County Jail Grievance Procedure was available to Carr when she was brought back to Pittsylvania County for court hearings.

11

four month investigation that followed Carr's informal complaint uncovered substantial evidence and witnesses. (See Pl.'s Br. Ex. 2.)

Hazelwood relies on the court's decision in Grimes v. Virginia, No. 7:05cv36, 2006 WL 197113, at *1 (W.D. Va. Jan. 24, 2006), to support his argument that Carr's informal complaint does not satisfy her exhaustion requirement under the PLRA. However, Grimes presents a completely different set of factual circumstances from the case at hand. In Grimes, the plaintiff was housed at Red Onion State Prison, which has a much more detailed and stringent grievance procedure than the Pittsylvania County Jail. See id. at *1 n.1. Grimes claimed that he exhausted his available administrative remedies because he filed informal complaints to which prison officials never responded. Id. at *1. However, no record of these informal complaints existed. Following an evidentiary hearing, the court found that Grimes' recollection of grievances filed was not credible. Id. at *3. Grimes had been housed at the Red Onion facility for a number of years and was very well versed with the grievance procedure. Id. at *6. The Grimes case is completely distinguishable from the instant case. Carr was housed at Pittsylvania County Jail for only three days following the alleged incident. The Pittsylvania County Jail Grievance Procedure differs from the Red Onion grievance policy, namely in that the Pittsylvania County Jail Written Grievance Procedure supplements, but does not replace, informal complaint resolution. Hazelwood's reliance on Grimes is misplaced.

As an informal complaint was the only administrative remedy available to Carr, and such a method of complaint is acceptable under the Pittsylvania County Jail Grievance Procedure, the undersigned finds that Carr has exhausted her available administrative remedies pursuant to the PLRA.

12
Case 7:07-cv-00001-JLK-mfu  Document 67-1  Filed 10/08/08  Page 12 of 13  Pageid#: 281

# VI

For the reasons stated above, the undersigned finds that Hazelwood waived the affirmative defense of failure to exhaust and, even if the defense has not been waived, Carr exhausted her available administrative remedies under the PLRA. Accordingly, it is recommended that Hazelwood's motion for summary judgment be denied.

The Clerk is directed to immediately transmit the record in this case to the Honorable Jackson L. Kiser, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Enter this 8th day of October, 2008.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge